IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:  Washington County Property
Owners' Improvement District No. 14 -
Saddle Brook at Valley View Subdivision
Infrastructure Project

CASE NO. 5:14-bk-71606

CHAPTER 9

## CHAPTER 9 PLAN OF DEBT ADJUSTMENT

The Washington County Property Owners' Improvement District No. 14 – Saddle Brook at Valley View Subdivision Infrastructure Project (the "Debtor"), Chapter 9 Debtor, proposes the following Plan for the adjustment of the Debtor's debts pursuant to Chapter 9 of the Bankruptcy Code, as may be amended or modified from time to time by the Debtor. ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT, AS APPROVED BY THE BANKRUPTCY COURT, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO OTHER SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE I.

## DEFINITIONS

For the purposes of this Plan, the following terms shall have the meanings specified below. Other terms used herein may be defined in other sections of the Plan. Any term used in the Plan that is not defined herein, but that is defined in the United States Bankruptcy Code or the Federal Rules Bankruptcy Procedure, shall have the meaning assigned to that term by the Bankruptcy Code or Rules.

1.1     "2007 Bond Documents" means (a) the 2007 Pledge and Mortgage; (b) the 2007 Trustee Agreement; (c) and all agreements, instruments, certificates and other documents related to the foregoing.

1.2     "2007 Bondholders" means the owners of record of the 2007 Bonds as of the Record Distribution Date.

1.3     "2007 Bonds" means the Washington County Property Owners' Improvement District No. 14 – Saddle Brook at Valley View Subdivision Infrastructure Project Improvement Bonds, Series A, issued in the original principal amount of $1,000,000 (the "2007 Series A Bonds"), and Series B, issued in the original principal amount of $3,930,000 (the "2007 Series B Bonds"), both dated May 31, 2007.

1.4     "2007 Bond Indebtedness" means all indebtedness evidenced by the 2007 Bonds, and the 2007 Bond Documents, including accrued interest thereon and the Indenture Trustee's fees and expenses, all as assumed by the District pursuant to the

2007 Bond Documents.

1.5   "2007 Pledge and Mortgage" means that certain recorded pledge and mortgage dated May 31, 2007, entered into by the District in favor of the Indenture Trustee for the 2007 Bondholders.

1.6   "2007 Trustee Agreement" means that certain agreement dated May 31, 2007, by and between the District and the Indenture Trustee in its capacity as trustee for the 2007 Bondholders.

1.7   "Administrative Claim" means the Claim of any kind specified in §507(a)(1) of the Code.

1.8   "Administrative Reserve Fund" has the meaning ascribed in Section 8.5.

1.9   "Allowed Claim" means any Claim in the amount and classification set forth in a Proof of Claim filed with the Court within the time fixed by the Court, or in the absence of such filing, unless the claim was listed by the Debtor as disputed, contingent or unliquidated, as set forth in the Debtor's List of Creditors and Amended List of Creditors filed in the case, in any event as to which no objection to the allowance thereof has been interposed within the applicable period fixed in the Plan or the Confirmation Order, or as to which any such objection has been determined by an Order of the Court providing for allowance. Multiple claims in the same Class held by a Creditor or Proofs of Claim filed by a Creditor shall be aggregated and constitute a single Claim.

1.10   "Annual Reverse Dutch Auction Redemption" means the redemption procedure with respect to the New Series C Bonds and New Series D Bonds as set forth in Sections 7.2 E. and 8.6 E. respectively.

1.11   "Assessed Benefits" has the meaning ascribed in Section 8.7 A.

1.12   "Ballot" means the form to be distributed with the Disclosure Statement to each holder of an impaired Claim on which the holder is to indicate acceptance or rejection of the Plan.

1.13   "Bankruptcy Rules", shall mean the Federal Rules of Bankruptcy Procedure.

1.14   "Cash Option" means the option available to holders of the 2007 Bonds to elect to tender their 2007 Bonds for a cash payment as set forth in Section 7.1 B. hereof.

1.15   "Claim" has the meaning set forth in Section 101(5) of the Code.

1.16   "Code" means the provisions of Title 11 of the United States Code, the United States Bankruptcy Code.

1.17   "Commissioners" are the governing body of the District, presently

consisting of James P. Knight and Bradley R. Hancock.

1.18  Reserved.

1.19  "Depository Trust Company" (DTC) of New York, New York, the electronic depository for the bonds issued by the District, and to whom Plan distributions to Class 1 claimants shall be made.

1.20  "Developer" means Saddle Brook at Valley View, LLC, an Arkansas limited liability company.

1.21  "District" is the Debtor, the Washington County Property Owners' Improvement District No. 14 – Saddle Brook at Valley View Subdivision Infrastructure Project, created under appropriate Arkansas law.

1.22  "Effective Date" means the date on which the conditions set forth in Article 7.1 of this Plan have been satisfied.

1.23  "Guarantors" mean James P. Knight, William L. Bradley, and Bradley Hancock, each of whom entered into Guaranty Agreements with the Indenture Trustee, each dated May 31, 2007 (collectively, the "Guaranty Agreements").

1.24  "Impaired" shall have the meaning provided in §1124 of the Code.

1.25  "Indenture Trustee" shall mean Community First Trust Company, Russellville, Arkansas, and any Successor thereto or any bond trustee with respect to the New Series C Bonds and New Series D Bonds.

1.26  "Interest Payment Date" means December 31st of each year during which any of the New Bonds are outstanding.

1.27  "Lien" has the meaning provided by §101 of the Code.

1.28  "Lot" or "Lots" have the meaning ascribed in Section 8.4 of the Plan.

1.29  "Lot Sale Revenues" has the meaning ascribed in Section 8.7 B. of the Plan.

1.30  "New Bond Documents" shall mean the New Indenture, together with all agreements, instruments, certificates and other documents related to the foregoing, each in a form deemed satisfactory to the Indenture Trustee and District.

1.31  "New Bonds" shall mean the "New Series C Bonds", which are to be issued in full satisfaction of the 2007 Bond Indebtedness as provided in Article 7.1 of this Plan, and the "New Series D Bonds", which are to be issued to Saddlebrook Investments, LLC in consideration of the undertakings of Saddlebrook Investments, LLC, as provided in Section 8.6 of this Plan.

1.32 "New Indenture" shall mean the Trust Indenture securing the New Bonds as provided in Article 7.1 of this Plan.

1.33 "Order of Confirmation" means the Order of the Court Confirming the Plan pursuant to §1129 of the Code.

1.34 "Plan" means this Debtor's Plan of Debt Adjustment in its present form or as it may be amended, modified or supplemented.

1.35 "Pro Rata" means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distributions made on account of all Allowed Claims in the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of the Allowed Claims of the Class in which such particular Allowed Claim is included.

1.36 "Saddlebrook Investments" means Saddlebrook Investments, LLC, an Arkansas limited liability that is wholly-owned by James P. Knight, and pursuant to Section 8.6 will undertake certain obligations with respect to and for the benefit of the District.

1.37 "Series C Principal Retirement Account" means the account to be established by the Indenture Trustee pursuant to the New Indenture from which principal payments with respect to the New Series C Bonds shall be paid, as more fully described in Section 8.7 C.

1.38 "Series D Principal Retirement Account" means the account to be established by the Indenture Trustee pursuant to the New Indenture from which principal payments with respect to the New Series D Bonds shall be paid, as more fully described in Section 8.7 C.

1.39 "Special Tax" has the meaning ascribed in Section 8.7 A. of the Plan.

1.40 "Unclaimed/Disputed Claims Reserve" has the meaning ascribed in Section 8.8 of the Plan.

1.41 "Unclaimed Distributions" shall mean any and all distributions pursuant to the Plan that are unclaimed for a period of one (1) year following the date of any distribution. Unclaimed Distributions shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Distributions.

## ARTICLE II.

### CONSTRUCTION

2.1     Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used in the Plan shall have the meanings provided in the Code or the Bankruptcy Rules.

2.2     Section captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

2.3     The first letters of terms defined in the Plan are capitalized.

## ARTICLE III.

### CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions shall apply to this Plan:

3.1     To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Court, the District may either reserve and segregate funds as is sufficient to provide for each of such Claims under the Plan, ask the Court to determine an appropriate reserve, or ask the Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Case.

3.2     Pursuant to §§901(a) and 1122(a) of the Code, Article V of the Plan designates two (2) Class of Claims.  As set forth below, Claims of the kind specified in §507(a)(2) of the Code have not been classified and are excluded from those set forth in Article V of the Plan, in accordance with §1123 (a)(1) of the Code.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a similar Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.  Multiple Proofs of Claim filed by a Creditor, if any, which qualify for inclusion within the same Class shall be aggregated and, if allowed, shall constitute a single Allowed Claim.

## ARTICLE IV.

### UNCLASSIFIED ADMINISTRATIVE CLAIMS

4.1     The holders of Administrative Claims shall receive on account of such Claims payment(s) in the amount of such Claims as set forth herein.  Administrative Claims described in Section 4.2 below for fees and/or costs of professionals employed by the District shall be paid on or before the Effective Date of the Plan or as soon thereafter as is reasonably practicable. Notwithstanding the foregoing, Administrative Claims incurred by the District in the ordinary course of business shall be paid in accordance

with the applicable ordinary business terms.

4.2     The District's bankruptcy counsel, Wolff & Ward, PLLC, was paid pre-petition a fee of $35,000 for their services herein.  It is estimated that an additional $20,000.00 of legal fees will be necessary to complete Confirmation and implementation of the Plan.  Additional Administrative Claims include certain fees incurred by the Indenture Trustee and the Indenture Trustee's counsel after the commencement of this case. Additional court costs of this proceeding, if any, will be also be paid as Administrative Claims.

4.3     With the exception of Administrative Claims for fees and/or costs of professionals employed by the District and Administrative Claims incurred in the ordinary course of business, all parties seeking payment of Administrative Claims must file a request for payment with the Clerk of the Court on or before thirty (30) days after the Confirmation Date.

## ARTICLE V.

## DESIGNATION OF CLASSES OF CLAIMS

Claims are classified under the Plan as follows:

5.1     <u>Class 1 (Bondholders)</u>.  Class 1 includes the Claims of all holders of the outstanding 2007 Bonds with respect to payment of the 2007 Bonds.  On May 31, 2007, the District issued $1,000,000 of 6% Series A Bonds maturing February 1, 2038 (the "2007 Series A Bonds"), and $2,930,000 of 5.5% Series B Bonds maturing February 1, 2016 (the "2007 Series B Bonds"). 2007 Series A Bonds in the principal amount of $955,000 remain unpaid. 2007 Series B Bonds in the principal amount of $2,895,000 remain unpaid. The 2007 Bonds were issued as fully registered securities in the "street name" of Cede & Co., as nominee for the Depository Trust Company (DTC) in New York City.  DTC acts as the securities depository for the 2007 Bonds and is the world's largest depository.  The 2007 Bonds were purchased through "DTC participants", such as brokerage firms and "safekeeping agents", who received a credit in the records of the DTC.   The ownership interests of all purchasers of the 2007 Bonds, the "beneficial owners", are in turn reflected in the records of the "DTC participants".  The identity of the "DTC participants" has been ascertained from DTC.  The "beneficial owners" of the 2007 Bonds are largely unknown to the District. The District's Disclosure Statement and this Plan, along with the Notice of Hearing thereon and other documents, have been sent to the DTC and to all "DTC participants", who have a fiduciary duty to forward the same to the actual owners of the Bond, the "beneficial owners".

5.2     <u>Class 2 (General Unsecured Claims)</u>.   There is presently one Class 2 Claim of the Indenture Trustee in the amount of $22,673.35, representing its pre-petition fees and costs, which the District does not dispute. The Debtor does not believe that any other claims exist under this class.

6

# ARTICLE VI.

## TREATMENT OF CLASSES UNIMPAIRED UNDER THE PLAN

6.1     <u>Class 2 (General Unsecured Claims)</u>.  Class 2 (General Unsecured Claims) are not impaired under the Plan.  The Plan leaves unaltered the legal, equitable and contractual rights of the holders of Claims in Class 2.

# ARTICLE VII.

## TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN

7.1     <u>Class 1 (Bondholders)</u>.  This class is Impaired under the Plan and shall be treated in accordance with the terms stated below.  The Debtor will solicit acceptances of the Plan from the Impaired Class.  On account of the Allowed Claims of the Bondholders and in full and complete satisfaction thereof, each of the Bondholders shall have the option, exercisable in the Ballot, to either:

A.     Elect to receive newly issued 0.5% Series C Bonds (the "New Series C Bonds"), as further described below, in an amount equal to 50% of the original face value of the 2007 Bonds currently held by such Bondholder; or

B.     Elect to tender all of the 2007 Bonds currently held by such Bondholder in an amount of 20% of the original face value of the 2007 Bonds currently held by such Bondholder and surrendered (the "Cash Option").  The cash payment will be in exchange for the 2007 Bonds surrendered and will be made by Saddlebrook Investments, to whom such Bondholder will transfer the 2007 Bonds surrendered. The maximum principal amount of the 2007 Bonds that Saddlebrook Investments is required to purchase pursuant to the Cash Option is $1,000,000. If Bondholders holding more than $1,000,000 principal amount of the 2007 Bonds elect the Cash Option, Saddlebrook Investments may, in its sole discretion, elect to purchase all of the 2007 Bonds so offered. If Saddlebrook Investments does not elect to purchase all of the 2007 Bonds so offered, it will purchase the 2007 Bonds offered, up to the principal amount of $1,000,000 or such greater principal amount as it may determine to purchase, purchasing such 2007 Bonds offered starting with the largest blocks offered and continuing in descending order of size of blocks offered until it has completed the purchase.

Each Bondholder shall make an election under either Section 7.1(A.) or Section 7.1(B.) above, and no combination thereof. In the event that a Bondholder fails to deliver its election pursuant to this Section 7.1 to the District within sixty (60) days after issuance of the notice of such election is delivered to DTC, such Bondholder shall be deemed to elect the option to receive New Series C Bonds as set forth under Section 7.1(A.) above.

7.2     <u>Description of New Series C Bonds</u>.

A.     <u>Generally</u>. The New Series C Bonds will be issued by the District to the Bondholders who do not timely make the election under Section 7.1(B.) above

upon conclusion of the election process described above, or as soon thereafter as is reasonably practicable. The amount of New Series C Bonds to be issued by the District will be dependent on how many Bondholders do not make an election under Section 7.1(B.) above. The New Series C Bonds will be issued by the District as fully registered bonds in denominations of $2,500, and will be initially registered in the name the registered holder of the surrendered 2007 Bonds, including Cede & Co., as nominee for DTC, if applicable.

    B. <u>Interest</u>. The New Series C Bonds shall bear interest at the rate of one-half percent (0.50%) from the date of their issuance, payable annually with interest accrued through December 31st and paid to the registered holders as the Interest Payment Date.

    C. <u>Maturity</u>. The New Series C Bonds shall mature thirty (30) years from the date of issuance and shall be subject to mandatory and optional redemption as set forth herein.

    D. <u>Optional Redemption</u>. The New Series C Bonds shall be subject to optional redemption, at par, on any date after their issuance, with funds from any source.

    E. <u>Annual Reverse Dutch Auction Redemption</u>. Each year as practical after the Interest Payment Date, the Indenture Trustee shall notify the holders of the New Series C Bonds of the amount of the Series C Principal Retirement Account. Such notice shall state that Series C Bondholders shall have 60 days within which to submit bids to have some or all of their New Series C Bonds redeemed at the price bid by such Bondholder. Upon the expiration of said 60 day period, the Trustee shall accept the bids, commencing with the lowest priced bid and continuing until bids have been accepted up to the amount available in the Series C Principal Retirement Account.

    F. <u>Mandatory Redemption</u>. In the event that after acceptance of the bids received in the Annual Reverse Dutch Auction Redemption process, there remains an amount in the Series C Principal Retirement Account sufficient to redeem one or more New Series C Bonds at par, the Indenture Trustee shall call and redeem the number of New Series C Bonds at par as the Indenture Trustee has sufficient funds in the Series C Principal Retirement Account to do so. The specific New Series C Bonds that are called for redemption shall be determined by random lottery selection.

    G. <u>Security for the New Series C Bonds</u>. The New Series C Bonds shall be secured by the 2007 Pledge and Mortgage, as amended to the extent necessary to secure the New Series C Bonds and New Series D Bonds, whereby the District pledged the Assessed Benefits to secure payment of the 2007 Bonds. In addition, the District shall grant the Indenture Trustee for the benefit of the holders of the New Series C Bonds and New Series D Bonds a first mortgage lien on the Lots conveyed to the District by the Developer, which mortgage will provide for a minimum release price of $17,000 per lot. The New Series C Bonds and New Series D Bonds shall be on parity with respect to the security of the 2007 Pledge and Mortgage and the first mortgage lien on the Lots.

8

7.3     Cramdown.  In the event that any Class entitled to vote on the Plan shall fail to accept the Plan in accordance with §§901(a) and 1129(a)(8) of the Code, the Debtor requests that the Court confirm the Plan in accordance with §1129(b) of the Code.

## ARTICLE VIII.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

8.1     Conditions to Plan Becoming Effective and Events to Occur on the Effective Date.  The Plan shall not be consummated and the Effective Date shall not occur until:

      A.     the Confirmation Order has been entered by the Bankruptcy Court; and,

      B.     the Confirmation Order has become a Final Order (this requirement may be waived by the Debtor); and,

      C.     the form of the New Bond Documents have been approved by the District and the Indenture Trustee, and said documents have been fully executed and delivered and the fully executed and authenticated New Bonds tendered to the holders of the 2007 Bonds in exchange for their 2007 Bonds.

8.2     Implementation of Plan.  The commissioners of the District are authorized and directed to take all necessary or appropriate action under state law applicable to the District to implement the Plan and effect the closing of the issuance of the New Bonds.

8.3     Cancellation of 2007 Indenture.  On the Effective Date, except as otherwise specifically provided for in the Plan or the Confirmation Order (a) the 2007 Bonds, the 2007 Indenture and any other related note, instrument, or document related thereto, other than the 2007 Pledge and Mortgage, will be cancelled as to the District, the Indenture Trustee, the Developer and the Guarantors, none of which shall have any continuing obligations thereunder, and (b) the obligations of, or Claims against District, the Indenture Trustee, the Developer and the Guarantors under, relating, or pertaining to the 2007 Indenture will be released and discharged; provided, that any such agreement that governs the rights of the holder of any of the 2007 Bonds will continue in effect solely for purposes of (i) allowing the Indenture Trustee to make the distributions to be made on account of such Claims under the Plan as provided in this Plan, and (ii) permitting the Indenture Trustee to maintain any rights or liens it may have against property to be distributed and such property other than the District's property for fees, costs, and expenses under such 2007 Indenture or other agreement.

8.4     Funding the Plan.  Currently, the District has little to no available funds on hand in order to implement the Plan. Accordingly, the Plan will be funded by the following steps:

      A.     Transfer of Lots to the District.  The District encompasses a subdivision constituting approximately 45 acres of real estate located in Washington

9

County, Arkansas, which has been developed into 128 separate lots (the "Lots")(each a "Lot"). Upon the Effective Date of the Plan, or as soon as reasonably practicable thereafter, the Developer, which is the current sole owner of the Lots, shall transfer title to the Lots to the District, free and clear of all Liens and encumbrances whatsoever other than real estate ad valorem taxes, which transfer shall be in satisfaction of the Special Taxes owed by Developer to the District. Contemporaneously, the District will enter into a Development Agreement with Saddlebrook Investments, whereby Saddlebrook Investments will immediately purchase four (4) of the Lots from the District at $17,000 per Lot and construct houses on such four (4) Lots and upon sale of each house, Saddlebrook Investments shall purchase an additional lot so that at all times so long as the District owns any of the lots, Saddlebrook Investments, LLC holds four (4) lots and is constructing houses on such lots for resale. Accordingly, at all relevant times Saddlebrook Investments will be obligated to own and be in the process of developing a minimum of four (4) Lots, until no Lots are owned by the District. The District will continue to market the remaining Lots to the public for sale at their fair market value.

        B.    <u>Payment to District</u>. In addition to the foregoing, Saddlebrook Investments will make a payment of not less than $240,000 to the District which shall be first be used by the District to pay Class 2 Claims and Allowed Administrative Claims with the balance allocated by the District to its Administrative Reserve Fund.

    8.5    <u>Administrative Reserve Fund</u>. The proposed Plan will take years to implement and administer. Accordingly, the District will require that a substantial amount of funds be reserved and set aside for payment of administrative expenses to be incurred in the future by the District in the ordinary course of business for administration of the Plan, including but not limited to: (1) maintenance of the roads and sewer systems within the District; (2) maintenance and marketing of the Lots; (3) payment of ad valorem taxes with respect to the Lots that constitute a Lien against the Lots, including such ad valorem taxes accruing prior to the conveyance of the Lots by the Developer to the District and accruing while owned by the District; (4) reasonable fees of professionals hired by the District, such as attorneys, accountants, appraisers, relators, consulting fees, and the Indenture Trustee to service and administer the New Series C Bonds and New Series D Bonds; and (5) any expenses incurred by the District or the Indenture Trustee with respect to collection of the Special Tax (as further described below). The District estimates that the initial sum of $157,000.00 to $172,000 will be allocated to a separate reserve account for the payment of such expenses (the "Administrative Reserve Fund").

    8.6    <u>Issuance of New Series D Bonds</u>. In consideration of (i) the payment to the District of not less than $240,000 described in Section 8.4 B. above; (ii) funding of the Cash Option purchases of Series A and Series B Bonds as described above in the estimated amount of up to $200,000; (iii) undertaking to provide for the benefit of the District those services necessary to cause the Lots to be ready for sale to builders, including but not limited to street maintenance, estimated to be at least $25,000; and (iv) undertaking the obligations set forth in the Development Agreement, the District will issue to Saddlebrook Investments certain 0.5% New Series D Bonds (the "New Series D Bonds"), further described below.

10

A. <u>Generally</u>. The New Series D Bonds will be issued by the District to Saddlebrook Investments upon completion of the transfer of the Lots to the District and the payment to the District described in Section 8.4 above, or as soon thereafter as is reasonably practicable. The amount of New Series D Bonds to be issued by the District will be $1,925,000. The New Series D Bonds will be issued by the District as fully registered bonds in denominations of $2,500, and will be initially registered in the name of Cede & Co., as nominee for DTC, which will act as securities depository for the New Series D Bonds.

B. <u>Interest</u>. The New Series D Bonds shall bear interest at the rate of one-half percent (0.50%) from the date of their issuance, payable annually with interest accrued through December 31st and paid to the registered holders as the Interest Payment Date.

C. <u>Maturity</u>. The New Series D Bonds shall mature thirty (30) years from the date of issuance and shall be subject to mandatory and optional redemption as set forth herein.

D. <u>Optional Redemption</u>. The New Series D Bonds shall be subject to optional redemption, at par, on any date after their issuance, with funds from any source.

E. <u>Annual Reverse Dutch Auction Redemption</u>. Each year as practical after the Interest Payment Date, the Indenture Trustee shall notify the holders of the New Series D Bonds of the amount of the Series D Principal Retirement Account. Such notice shall state that Series D Bondholders shall have 60 days within which to submit bids to have some or all of their New Series D Bonds redeemed at the price bid by such Bondholder. Upon the expiration of said 60 day period, the Trustee shall accept the bids, commencing with the lowest priced bid and continuing until bids have been accepted up to the amount available in the Series D Principal Retirement Account. Provided however, so long as the Series D Bonds outstanding are all held by only one registered owner other than Cede & Company, the Indenture Trustee will omit the Annual Reverse Dutch Auction Redemption process described above and utilize the amount available in the Series D Principal Retirement Account to redeem Series D Bonds at par in accordance with Section 8.6 F.

F. <u>Mandatory Redemption</u>. In the event that after acceptance of the bids received in the Annual Reverse Dutch Auction Redemption process or in the event the Annual Reverse Dutch Auction Redemption process is not conducted, there remains an amount in the Series D Principal Retirement Account sufficient to redeem one or more New Series D Bonds at par, the Indenture Trustee shall call and redeem the number of New Series D Bonds at par as the Indenture Trustee has sufficient funds in the Series D Principal Retirement Account to do so. The specific New Series D Bonds that are called for redemption shall be determined by random lottery selection.

G. <u>Security for the New Series D Bonds</u>. The New Series D Bonds shall be secured by the 2007 Pledge and Mortgage, as amended to the extent necessary to secure the New Series C Bonds and New Series D Bonds, whereby the District pledged

11

the Assessed Benefits to secure payment of the 2007 Bonds. In addition, the District shall grant the Indenture Trustee for the benefit of the holders of the New Series C Bonds and New Series D Bonds a first mortgage lien on the Lots conveyed to the District by the Developer, which mortgage will provide for a minimum release price of $17,000 per lot. The New Series C Bonds and New Series D Bonds shall be on parity with respect to the security of the 2007 Pledge and Mortgage and the first mortgage lien on the Lots.

      8.7      <u>Servicing the New Series C Bonds and New Series D Bonds</u>. The debt service of the New Series C Bonds and New Series D Bonds shall be made by the Indenture Trustee as follows:

          A.      <u>Special Tax Revenues</u>. Pursuant to <u>Ark</u>. <u>Code</u> <u>Ann</u>. § 14-93-101 et. seq. and a Second Amended Assessment Order entered May 11, 2007 by the County Court of Washington County, Arkansas, the Lots have collectively been assessed with the value of benefits received by the owners of the Lots as a result of certain improvements performed on the Lots (the "Assessed Benefits"). Pursuant to said Second Amended Assessment Order, the total amount of the Assessed Benefits is $3,084,000 which may be collected at the maximum rate of 8.60% of the Assessed Benefits per year (the "Special Tax"). Pursuant to a Tax Prepayment Agreement dated May 31, 2007, upon the District's sale of a Lot to a third party, the District shall begin to collect the Special Tax at a modified rate of 2.87% of the Assessed Benefits assigned to such Lot pursuant to the aforementioned Second Amended Assessment Order. The Special Tax will continue to be collected until all of the New Series C Bonds and New Series D Bonds have been redeemed. The County Collector of Washington County, Arkansas is charged with the collection of the Special Taxes, and is entitled to a 3% commission of the Special Taxes collected under Arkansas law. Upon Confirmation of the Plan, the Tax Prepayment Agreement will be amended to provide that upon conveyance by the Developer of the Lots to the District, no Special Tax will be assessed against the District and that upon the District's sale of a Lot to a third party, the District shall begin to collect the Special Tax at a modified rate of 2.87% of the Assessed Benefits. The Special Tax collected by the District shall be used in accordance with Section 8.7 C below.

          B.      <u>Lot Sale Revenues</u>. As described above, the District will enter into a Development Agreement with Saddlebrook Investments, whereby Saddlebrook Investments will immediately purchase four (4) of the Lots from the District at $17,000 per Lot and construct houses on such four (4) Lots and upon sale of each house, Saddlebrook Investments shall purchase an additional lot so that at all times so long as the District owns any of the lots, Saddlebrook Investments, LLC holds four (4) lots and is constructing houses on such lots for resale. Accordingly, at all relevant times Saddlebrook Investments will be obligated to own and develop a minimum of four (4) Lots, until no Lots are owned by the District. The District will continue to market the remaining Lots to the public for sale at their fair market value. Upon the District's receipt of the proceeds of the sale of a Lot, less customary expenses incurred by a seller of real estate, ("Lot Sale Revenues") shall be used in accordance with Section 8.7 C below.

          C.      <u>Use of Revenues</u>. The District will use the revenues received from the collection of Special Taxes and Lot Sale Revenues first to pay the operating expenses

of the District, which shall include reasonable fees of professionals hired by the District, such as attorneys, accountants, appraisers, relators, consulting fees, and the Indenture Trustee to service and administer the New Series C Bonds and New Series D Bonds, and shall remit the funds in excess of such operating expenses, including any reasonable reserves established by the District, to the Indenture Trustee for debt service with respect to the New Series C Bonds and New Series D Bonds. Pursuant to the New Indenture, the Indenture Trustee shall, after payment of any reasonable expenses of the Indenture Trustee not paid directly by the District, divide the amount received into two (2) equal shares, one of the debt service of the New Series C Bonds and the other share for the debt service of the New Series D Bonds. Out of the amounts for debt service of the New Series C Bonds, the Indenture Trustee shall further set aside an amount sufficient to pay interest on the New Series C Bonds for the twelve months following receipt of said funds and deposit the balance of such amount into the Series C Principal Retirement Account. The Series C Principal Retirement Account shall be used by the Indenture Trustee to redeem New Series C Bonds in accordance with Section 7.2 E. and F. in accordance with the provisions of the New Indenture. Out of the amounts for debt service of the New Series D Bonds, the Indenture Trustee shall further set aside an amount sufficient to pay interest on the New Series D Bonds for the twelve months following receipt of said funds and deposit the balance of such amount into the Series D Principal Retirement Account. The Series D Principal Retirement Account shall be used by the Indenture Trustee to redeem New Series D Bonds in accordance with Section 8.6 E. and F. in accordance with the provisions of the New Indenture.

       8.8    <u>Reserve for Disputed Claims</u>.  The District does not dispute the claims of Bondholders; however, should such disputes develop, on and after the Effective Date, the District will reserve Distributions for the holders of Disputed Claims in a segregated account (the "Unclaimed/Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan. Except to the extent that the Court shall have estimated under §502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have been disbursed on account of all Disputed Claims, if all Disputed Claims were allowed in the full amount claimed by the holders thereof. At such time as a Disputed Claim becomes an Allowed Claim, the Distribution that would have been disbursed had the Disputed Claims been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim within thirty (30) days. At such time as all Disputed Claims have been finally determined, the balance of the cash not theretofore distributed will be distributed to the Indenture Trustee and added to the Series C Principal Retirement Account.

       8.9    <u>Unclaimed Distributions</u>.  The District shall deposit any Unclaimed Distributions in the Unclaimed/Disputed Claims Reserve to be maintained by the District and held in trust for the benefit of the holders of Allowed Claims entitled thereto under the terms of the Plan. Unclaimed Distributions due to the holders of an Allowed Claim shall, at any time within one (1) year following the initial distribution date on account of a particular Class, be released from the unclaimed distribution reserve and delivered to the holder upon presentation of proper proof by such holder of its entitlement thereto. At

13

the end of one (1) year following the initial distribution date, the holders of Allowed Claims theretofore entitled to Unclaimed Distributions shall cease to be entitled to any distribution on such Allowed Claims or on any other basis. At the end of one (1) year following the initial distribution date, the balance held in the Unclaimed/Disputed Claim Reserve, less reserved amounts designated for any Disputed Claims that have not yet been finally determined and the estimated expenses associated with administering the account and making future distributions, shall be disbursed (the "Unclaimed Funds Disbursement") to the Indenture Trustee to be added to the Series C Principal Retirement Account. At the end of each successive six (6) month period following the Unclaimed Funds Disbursement, the balance held in the Unclaimed/Disputed Claim Reserve, less reserved amounts designated for any Disputed Claims that have not yet been finally determined and the estimated expenses associated with administering the account, shall be disbursed to the Indenture Trustee to be added to the Series C Principal Retirement Account. After all Disputed Claims have been finally determined and reserved amounts for Disputed Claims have been appropriately disbursed, the remaining balance held in the Unclaimed/Disputed Claim Reserve shall become property of the District when it totals less than $2,500; after which time no further disbursements to holders of Allowed Claims or Unclaimed Distributions shall be made.

       8.10    <u>Post-Confirmation Operations</u>. The District will continue to exist after confirmation of the Plan for the purpose of selling lots, collecting the Special Taxes, and making disbursements in accordance with the Plan and, upon completing all disbursements as authorized under the Plan, may, at the option of the Commissioners, request that the Washington County Court enter appropriate Orders dissolving the District. The District will continue to make payments to the Indenture Trustee and annual payments of accrued interest and principal will be made by the Indenture Trustee on the New Series C and New Series D Bonds in the manner described Sections 7.2 and 8.6 respectively until the earlier of such time as there are no New Series C or New Series D Bonds outstanding or the maturity date of the Series C and Series D Bonds. There will be no further distributions thereafter.

       8.11    <u>Execution and Delivery of Documents</u>. The Debtor is authorized to make, execute, deliver, and record documents and instruments as are necessary or appropriate to promote and implement Consummation of the Plan or to carry out the purposes of the Plan.

       8.12    <u>Objection to Claims and Interests</u>. Any objection to any Claim shall be filed on or before 30 days after the Effective Date. This time period can be extended by the Court upon request of the Debtor.

       8.13    <u>Additional Administrative Claims</u>. The last day for filing of current Administrative Claims, except for Claims for compensation and cost reimbursement of professional persons employed by the District which need not be filed, shall be thirty (30) days after the Confirmation Date.

8.14    Retention and Enforcement of Claims.  Pursuant to §§901(a) and 1123(b)(3) of the Code, the Debtor may maintain and enforce any claims and/or rights of the Debtor.

8.15    Court Fees.  On or before the Effective Date, all fees (if any) due from the Debtor to the Clerk of the Court shall be paid in full.

8.16    Implementation Reports.  The Debtor's Indenture Trustee shall prepare Implementation Reports at least annually, commencing one (1) year following the date of entry of an Order confirming the Plan, showing all receipts and disbursements. These Implementation Reports will be provided by the Indenture Trustee to all "DTC participants" who may make written request therefore to the Indenture Trustee.

## ARTICLE IX.

### DISCHARGE, INJUNCTION AND EXCULPATION

9.1    Discharge of Debts.  Except as otherwise provided in the Plan, Confirmation of the Plan will discharge the Debtor from any and all Claims and Debts that arose prior to the Confirmation Date or portions thereof, and which are not to be paid under the terms of the Plan, whether or not: (1) a proof of Claim based on such Debt is filed or deemed filed under §501 of the Code: (2) such Claim is an Allowed Claim under §502 of the Code; or (3) the holder of such Claim accepts the Plan. Distributions under the Plan will be the only distributions made upon Claims, and any and all sums owed thereon in excess thereof, as of the date of commencement of this Chapter 9 case shall be discharged.

9.2    Judgments Obtained on Discharged Debts are Void.  Pursuant to §§901(a) and 524(a)(1) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944(b) of the Code, voids any judgments at any time obtained, to the extent that such judgment is a determination of liability of the Debtor with respect to any Debt discharged, whether or not discharge of such Debt is waived.

9.3    Discharge Injunction.  Pursuant to §§901(a) and 524(a)(2) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944(b) of the Code shall operate as an injunction against the commencement or a continuation of an action, the employment of process, or an act to collect, recover, or offset any discharged Debt as a liability of the Debtor, whether or not discharge of such Debt is waived.

9.4    **Exculpation.**

**A.    Except as otherwise expressly provided in the Plan, all Entities who have held, hold or may hold Claims are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim against the District, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the District, (c) creating, perfecting, or enforcing any encumbrance of any kind against the District or against the property**

**or interests in property of the District and (d) asserting any defense or right setoff, subrogation or recoupment of any kind against any obligation due from the District or against the property or interests in property of the District with respect to any such.**

**B.     Except as provided in the Plan, as of the Effective Date, all persons are permanently enjoined from commencing or continuing in any manner, any action or proceeding, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action of the District. For and in consideration of the conveyance by Developer of the Lots to the District on the Effective Date, and the undertakings of Saddlebrook Investments as provided in the Plan, any and all Causes of Action which the District, Indenture Trustee or any Bondholder has or may have against Developer, the Guarantors, or Saddlebrook Investments, including without limitation, any causes of action arising under that certain Developer Agreement dated May 31, 2007 between District and Developer and those certain Guaranty Agreements dated May 31, 2007 by and among Guarantors and Community First Trust Company, Trustee, shall be deemed to have been released.**

## ARTICLE X.

## MODIFICATION OF PLAN

10.1   The Plan may be modified upon motion of the District, or corrected by the District prior to the Effective Date, without notice and a hearing and without additional disclosure pursuant to §1125 of the Code provided that, after notice to all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors.

10.2   At any time prior to Consummation of the Plan, the District may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE XI.

## GENERAL PROVISIONS

11.1   <u>Jurisdiction</u>.  The Court will retain jurisdiction until Consummation of the Plan or the entry of a Final Decree closing the Case. The Court shall further retain jurisdiction under the Plan for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to:

> 11.1.1   The classification or allowance of a Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting and the determination of such objections as may be filed against Creditors' Claims.

11.1.2  The determination of all causes of action, controversies, disputes or conflicts involving the right to participate in any Distribution under the Plan, whether or not subject to an action pending as of the Effective Date, between the District and any other party.

11.1.3  The correction of any defect, curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Order of Confirmation, as may be necessary to carry out the purposes and intent of the Plan.

11.1.4  The modification or amendment of the Plan after Confirmation pursuant to the Bankruptcy Rules or Code.

11.1.5  The enforcement and interpretation of the terms and provisions of the Plan.

11.1.6  The entry of any Order concluding or terminating the Case.

11.1.7  The granting of extensions of any deadlines set herein.

11.1.8  The administration of the Case, and implementation and Consummation of the Plan.

11.2  *Interpretation*.  To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, or any other matter, the terms of the Plan shall control.

11.3  *Binding Effect*.  Upon Confirmation of the Plan, the District, any entity acquiring property pursuant to the Plan, and all Creditors, whether or not such Creditor has filed a Claim or such Claim is deemed filed under §501 of the Code, and whether or not such Claim is allowed under §502 of the Code, and whether or not such Creditor has accepted the Plan, shall be bound by the provisions of the Plan pursuant to §944(a) of the Code.

11.4  *Applicable Law*.  The Plan is to be governed by and construed under the Code and the laws of the State of Arkansas, as may be applicable.

11.5  *Implementation Orders*.  At any time, the Court may make such Orders or give such direction as may be appropriate under §§945(a) and 1142(b) of the Code.

Respectfully Submitted,

Washington County Property Owners' Improvement District No. 14 – Saddle Brook at Valley View Subdivision Infrastructure Project


By: /s/ Rufus E. Wolff
Rufus E. Wolff (Ark. Bar # 85175)
Wolff & Ward, PLLC
900 S. Shackleford, Ste. 615
Little Rock, Arkansas 72211
Ph. (501) 954-8000
Fax (866) 419-1601
rwolff@wolfflawfirm.net

<u>CERTIFICATE OF SERVICE</u>

       I, Vincent M. Ward, Attorney for the Debtor herein, hereby certify that I have served a true and correct copy of the foregoing Chapter 9 Plan of Adjustment upon all creditors, parties in interest and those persons shown below, by first class mail, postage prepaid, to each at their regular mailing address, or via the US Bankruptcy Court's CM/ECF electronic mail system, all on this 15th day of April, 2015.

                                                         /s/ Vincent M. Ward
                                                         Vincent M. Ward

The Capital Bank
12224 Chenal Parkway
Little Rock, AR 72211

M & P Community Bancshares, Inc.
120 Hazel Street
Newport, AR 72112

Merchants and Planters Bank
120 Hazel Street
Newport, AR 72112

Timberland Bancshares, Inc.
451 N. Washington
El Dorado, AR 71730

Community First Trust Company
135 Section Line Rd. C-1
Hot Springs, AR 71913

Kendel W. Grooms
Campbell & Grooms, PLLC
8500 W. Markham Street, Suite 105
Little Rock, AR 72205

CEDE and Co.
c/o Depository Trust Company
55 Water Street
New York, NY 10041

James E. Smith (*via CM/ECF system - jsmith@williamsanderson.com*)
Williams & Anderson PLC
111 Center Street, Suite 2200
Little Rock, AR 72201

John Kooistra, III (*via CM/ECF system - jkooistra@williamsanderson.com*)
Williams & Anderson PLC
111 Center Street, Suite 2200
Little Rock, AR 72211

U.S. Trustee (*via CM/ECF system - USTPRegion13.LR.ECF@usdoj.gov*)